SMITH, Chief Judge,
dissenting with opinion.
I would reverse. Both the trial court and the majority, in my view, tend to rely heavily on the knowledge possessed by Pike’s employee, Bob Cross, concerning the pending litigation and the need to turn the matter over to Pike’s counsel for the filing of legal defenses, and at the same time tend to minimize the actions of Atlantic which substantially contributed to the state of confusion which Pike encountered in the period immediately preceding entry of the default.
It is undisputed that settlement negotiations between Atlantic and Pike’s non-lawyer employee, Cross, commenced after service of the summons and complaint on May 22, 1987, and continued into August. Atlantic’s counsel was well aware of the fact that the litigation had been in a state of suspension until August 13,1987, on which date counsel filed the return of service of the summons and complaint with the clerk. On the same date, counsel wrote to Cross stating, among other things (and confirming a telephone conversation with Cross), that “my client has never authorized me to withdraw the legal action” filed against Pike. He also advised that the Release of Lien forms sent by Cross had been received but could not be executed; and, since Pike had received the final contract payment less a reserve for deficiencies, “our client is entitled to proceed under the complaint subject to any other defenses that you might have.” (emphasis supplied). The letter continues and concludes with notice that Pike was given until August 24, 1987, to file a responsive pleading to the complaint, and, finally: “If this is not done I have been instructed to enter a default judgment against your company.” Even had the matter gone no further, the letter from counsel, coming on the heels of a long period of negotiation and communication, does not unequivocally close the door on possible further consideration of Pike’s position. It is not surprising, therefore, that on August 14, 1987, the day following this letter by Atlantic’s counsel, Atlantic’s Executive Vice President wrote a lengthy letter addressed to Pike, to the attention of Cross, commenting on the results of some engineering tests of the asphalt pavement in controversy. In this letter, Atlantic acknowledged, in effect, the failure of the asphalt and recommended its removal and the resurfacing of the parking area with another type mix than the one specified in the plans, i.e., Type S-I mix rather than 1 ¼ inch Type II. The letter concludes with an offer to make a bid to accomplish the additional work, qualified by the statement that “the matter of the tender Type II asphalt *489 and an agreeable method of payment for the additional work would have to be worked out prior to our starting work.”
Again, through the letter from its corporate official, Atlantic manifested a continuing disposition to work out the problems associated with this construction job by means other than litigation. What should be of great concern, moreover, is that Atlantic here sought to “double-track” its dispute resolution efforts, proceeding both by edict from its counsel, and by subsequent and contradictory overture by its corporate official.
I would hold that under these circumstances, the entry of default and securing of a final judgment without notice of hearing should not stand.
The Bludworth case, cited in the majority opinion, is distinguishable. There the two defendants, both lawyers, simply failed to do anything in response to the suit filed against them after plaintiff’s counsel orally advised them of the default status of the case, and again advised them by letter that they were in default and asked them to please file a responsive pleading. The Bludworth defendants’ sole contention on appeal was that a secretary in Mr. Blud-worth’s office failed to forward the suit papers to the Attorney General as soon as she should have, which they urged (unsuccessfully) “constituted a ‘clerical error’ or excusable neglect as a matter of law.” Id. at 165.
Although admittedly the facts here are not identical, this case more nearly resembles Johnson v. Buxton, 262 So.2d 892 (Fla. 2nd DCA 1972). In Johnson, after negotiations and successful arbitration of some differences between the parties, plaintiff’s attorney filed a praecipe for default on the day before the plaintiff wrote to the defendant asking that a contemplated second meeting with the arbitrators “be cancelled ‘for the time being.’ ” Id. at 893. In reversing the trial court’s order denying a motion to set aside the default judgment, the appellate court observed: “Buxton’s [the plaintiff’s] conduct in this case might reasonably have led the defendant to think that, unless arbitration failed, he might never need a lawyer at all.” Id. at 893.
Here, while Atlantic cannot be held directly responsible for any confusion existing in Pike’s local office during the crucial period between Atlantic’s letter of August 14, 1987, and entry of the default on August 25, 1987, nevertheless, Atlantic’s delayed action in reengaging the legal machinery after a prolonged period of negotiation with Pike’s lay employee had the effect of thrusting the matter into the litigation mode at a time when Pike was indisposed to handle it properly.
For the above reasons, the default judgment should be set aside and the cause should be determined on its merits.